United States District Court
Southern District of Texas

**ENTERED**

March 03, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| ALEKSEI STRUNIN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:26-CV-00106 |
| | § | |
| MARIO GARCIA, *et al.*, | § | |
| | § | |
| Respondents. | § | |

**ORDER**

Petitioner Aleksei Strunin filed his Petition for Writ of Habeas Corpus on January 23, 2026. (Dkt. 1.) Petitioner challenges the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS). (*Id.*) For the reasons set forth below, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is GRANTED IN PART, and Respondents' Response to Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 16), is DENIED.

**Background**

**A. Custody Determinations for Applicants for Admission**

On May 15, 2025, the Board of Immigration Appeals (BIA) issued a published decision that expanded the application of mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *See Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). *Matter of Q. Li* involved a noncitizen who was arrested by DHS shortly after entering the United States, released on parole under the Immigration and Nationality Act (INA) § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), and then redetained two years

1 / 19

later at a check-in appointment with DHS. *Id*. at 67.[1] The BIA held that "an applicant for admission who was arrested without a warrant while arriving in the United States and thereafter placed in removal proceedings, is detained under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), until the conclusion of removal proceedings" and that an applicant for admission is therefore "ineligible for bond." *Id*. at 71.

Then on July 8, 2025, DHS announced a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," further changing the interpretation of the applicable statutory authority for the detention of noncitizens classified as applicants for admission. *See* ICE Memo: Interim Guidance Regarding Detention Authority for Applicants for Admission, American Immigration Lawyers Association (July 8, 2025), https://perma.cc/2V6H-FHVD. The memo states that 8 U.S.C. § 1225(b)(2), rather than 8 U.S.C. § 1226(a), is the applicable immigration detention authority for all noncitizens who are classified as applicants for admission, regardless of their manner of entry into the country or their time present in the United States prior to apprehension. (*See id.*) Shortly thereafter, on September 5, 2025, the BIA issued another published decision in line with this interim guidance, holding that Immigration Judges (IJs) lack authority to hear bond requests or to grant bond to all noncitizens who are present in the United States without admission because they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

These changes in administrative policy have resulted in a growing number of cases across the country on the statutory interpretation of the INA. *See, e.g., Fuentes v. Lyons*, 5:25-cv-00153,

---

[1] An applicant for admission detained under 8 U.S.C. § 1225(b)(1) or (b)(2) may be temporarily paroled pursuant to § 1182(d)(5)(A), commonly referred to as "humanitarian parole." *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

Dkt. No. 15 (S.D. Tex. Oct. 16, 2025). On February 6, 2026, the United States Court of Appeals for the Fifth Circuit addressed the dispute over the statutory interpretation of 8 U.S.C. § 1225(b)(2)'s mandatory detention provision in *Buenrostro-Mendez v. Bondi*, — F.4th —, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026) ("*Buenrostro-Mendez*"). In the precedential decision, the Fifth Circuit determined that noncitizens apprehended in the interior who entered without inspection are "applications for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore are not entitled to bond hearings under 8 U.S.C. § 1226(a). *Id.* at *4. The decision was limited to the statutory interpretation of the applicable provisions and left unresolved other claims brought by petitioners challenging their mandatory detention, including constitutional questions under the Due Process Clause. *Id.* at *9. Petitioner's case, like many others before the Court, arises out of his recent reapprehension and redetention by ICE pursuant to these changes.

### B. Factual Background

Petitioner Aleksei Strunin ("Petitioner" or "Mr. Strunin") is a native of Russia. (Dkt. 1 at 3; Dkt. 16 at 2; Dkt. 17 at 1.) He entered the United States in February of 2023 at a port of entry where he was processed by immigration authorities. (Dkt. 1 at 5; Dkt. 16 at 2; Dkt. 17 at 2.) He was served with a Notice to Appear (NTA) which charged Petitioner with violating § 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I), as a noncitizen who did not possess a valid entry document. (Dkt. 16 at 2; Dkt. 17 at 7–10.) Petitioner requested asylum due to fear of returning to his home country, and he was paroled into the United States for one year pending his 8 U.S.C. § 1229a proceedings. (Dkt. 1 at 5; Dkt. 16 at 2; Dkt. 17 at 2.) Petitioner filed a timely application for asylum and withholding of removal while on parole. (Dkt. 1 at 5; Dkt. 16 at 2; Dkt. 17 at 2.) Petitioner also received work authorization while on parole. (*See* Dkt. 1 at 5.) While on

parole, Petitioner attended all scheduled immigration hearings and complied with all ICE check-in requirements. (Dkt. 1 at 5; Dkt. 2 at 2.) Additionally, Petitioner has no criminal record. (Dkt. 2 at 2.)

Petitioner was detained in August of 2025 while working as a truck driver. (*Id*.) Petitioner was pulled over at a weighing station and asked to present his documentation, including his work permit. (*Id*.) Petitioner was told by immigration officials that he had no traffic violations or pending criminal cases. (*Id*.) After Customs and Border Patrol inspected Petitioner's documents, including his work authorization, Petitioner was detained and taken into custody. (*Id*. at 3.) Petitioner was then transferred to Webb County Detention Center where he remains detained. (*Id*.) He states that he was never afforded a bond hearing, and that he was informed that all bond motions were being categorically rejected for individuals categorized as "arriving aliens," for having entered the United Stated through a port of entry. (Dkt. 1 at 6.)

Petitioner was initially scheduled for a merits hearing in his immigration case on October 7, 2025, but his hearing was rescheduled to December 22, 2025. (Dkt. 2 at 3.) His hearing was again rescheduled twice more because of ongoing severe medical symptoms and his inability to participate meaningfully as a result of his illness. (*Id*.) Petitioner states in his petition that due to ongoing plumbing and sewage issues at the detention center, Petitioner has been forced to sleep on the cold, wet floor and that his health has further deteriorated. (*Id*. at 4.) On February 18, 2026, Petitioner was ordered removed by an IJ. (Dkt. 26 at 2–3.) Petitioner orally reserved his right to appeal and is now preparing to file an appeal with the BIA. (*Id*. at 3.) Petitioner's removal order is not administratively final, and he remains in pre-final-order detention. (*Id.*); *see also* 8 U.S.C. § 1231 (describing that the removal period begins when an order of removal becomes administratively final); 8 CFR § 1241.1(c) (describing that a removal order is administratively

4 / 19

final "upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time"). Petitioner remains detained at the Webb County Detention Center in Laredo, Texas. (Dkt. 2 at 3; Dkt 26 at 3.)

### C.  Procedural Background

Petitioner filed his habeas petition on January 23, 2026. (Dkt. 1.) Petitioner argues (1) that his prolonged detention without an individualized determination as to the need for detention violates due process; (2) that 8 U.S.C. § 1225(b)(2) does not apply to Petitioner; (3) that his current confinement is unlawfully punitive in nature. (*Id.* at 8–19.) Petitioner seeks immediate release from custody, or in the alternative an individualized bond hearing before an immigration judge, and an injunction, enjoining Respondents from continuing Petitioner's alleged unlawful detention. (*Id.* at 18–19.)

The Court ordered Respondents to show cause and submit a response to Petitioner's petition by February 2, 2026, and for Petitioner to reply to Respondents' Response by February 9, 2026. (Dkt. 7.) Respondents filed a timely response to the Petition and a Motion for Summary Judgment. (Dkt. 16.) Respondents first argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225 and further argue that Petitioner's due process claims fail because Petitioner failed to identify a due process violation. (*Id.* at 3–4.) Petitioner filed a timely reply to Respondents response on February 8, 2026, first emphasizing Petitioner's arguments that he is not detained under 8 U.S.C. § 1225(b), then arguing that Petitioner's due process rights were violated because he was detained without any prior individualized review. (Dkt. 19 at 2–6.)

On February 10, 2026, the Court ordered additional briefing on Petitioner's claim that his detention without an individualized assessment of his flight risk and dangerousness violates his

due process rights under the Fifth Amendment. (Dkt. 20.) Respondents filed supplemental briefing on February 13, 2026, arguing that Petitioner's substantive due process arguments are foreclosed by *Demore v. Kim*, 538 U.S. 510, 523 (2003). (Dkt. 21 at 1–2.) Respondents further argue that Petitioner's procedural due process claims fail because as a noncitizen subject to mandatory detention, Petitioner does not have a right to a bond hearing during removal proceedings. (*Id*. at 3.) Petitioner submitted a supplement to his petition on February 23, 2026, updating the Court on the status of his immigration case and reiterating Petitioner's arguments. (*See* Dkt. 26.)

## Legal Standard

### A. 28 U.S.C. § 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws. . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The writ of habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). Accordingly, 28 U.S.C. § 2241 confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Zadvydas*, 533 U.S. at 687 (citing 28 U.S.C. § 2241(c)(3)); *see also Demore*, 538 U.S. at 517; *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

6 / 19

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citation omitted).

### B.  Rule 56(a) Summary Judgment

Generally, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. Bromac Title Servs., L.L.C.,* 755 F.3d 347, 350 (5th Cir. 2014). If the moving party meets its burden of demonstrating the absence of a genuine factual dispute, the non-movant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party," and a "fact issue is 'material' if its resolution could affect the outcome of the action." *Canady v. Davis*, 687 F. App'x 362, 365 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)). "Because this case arises in a summary judgment posture, we view the facts in the light most favorable to [Petitioner], the nonmoving party." *Id*. (quoting *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 603 (2015)).

### Discussion

The central question before the court is whether Petitioner has a protected liberty interest in his freedom from detention by virtue of his presence in the country after having entered the United States as an "arriving alien" and having been granted parole prior to his redetetion by ICE. Petitioner's case presents similarities to the legal issues considered by the Court in *Bonilla Chicas*

7 / 19

*v. Warden*, 5:26-cv-00131, Dkt. No.11 (S.D. Tex. Feb. 20, 2026) ("*Bonilla Chicas*") in which the Court considered whether a noncitizen who enters the United States without inspection can obtain a liberty interest in their freedom from detention by virtue of their presence in the country. In *Bonilla Chicas*, the Court determined that the petitioner did have a protected liberty interest, and the Court held that detention under 8 U.S.C. § 1225(b)(2) without an individualized assessment of the need for detention of a noncitizen who had been living in the United States violated the noncitizen's rights under a *Mathews v. Eldridge*, 424 U.S. 319, 332-333 (1976) analysis. *Bonilla Chicas*, 5:26-cv-00131, Dkt. No.11 (S.D. Tex. Feb. 20, 2026).

Although similar, Mr. Strunin's case differs factually because he entered at a port of entry as an "arriving alien" and was granted parole. (*See* Dkt. 16 at 2; Dkt. 17 at 2.) As discussed in depth below, noncitizens, such as Petitioner, who are paroled into the country are subject to a legal fiction known as the "entry fiction" under which those "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Thuraissigiam*, 591 U.S. 103, 139 (2020); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953); *Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958).

Thus, the Court must address whether the entry fiction precludes Petitioner from acquiring a protected liberty interest in his freedom from detention by virtue of his parole. The Court first addresses its jurisdiction to hear Petitioner's challenge to his current detention by DHS before evaluating Petitioner's due process claim under the Fifth Amendment.

**A. Jurisdiction**

Under the INA, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"), Congress enacted certain "jurisdiction stripping"

provisions which limit federal courts' jurisdiction to review the removal of noncitizens. In *Bonilla Chicas* the Court considered the jurisdiction stripping provisions codified in 8 U.S.C. §§ 1252(g) and 1252(b)(9) and concluded that neither stripped the Court of jurisdiction to hear the petitioner's unlawful detention claim. *Bonilla Chicas*, 5:26-cv-00131, Dkt. No.11 at *6–9 (S.D. Tex. Feb. 20, 2026). The Court adopts the same reasoning here. The Court also briefly considers 8 U.S.C. §§ 1252(e) and 1252(a)(2) as applicable to noncitizens who enter the United States and are subject to § 1225(b)(1) or who are granted parole.

8 U.S.C. § 1252(e) reads in part that "no court may—(A) enter declaratory, injunctive, or other equitable relief in any *action pertaining to an order to exclude* an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection[.]" (emphasis added). Here, Petitioner does not request relief in an action pertaining to an order to exclude under 8 U.S.C. § 1225(b)(1), indeed Petitioner does not challenge an order of removal at all, rather Petitioner challenges the lawfulness of his ongoing detention. *See Brumme v. I.N.S.*, 275 F.3d 443, 446 (5th Cir. 2001) (upholding a district court's determination that that 8 U.S.C. § 1252(e) stripped the court of jurisdiction to hear a petitioner's claim where "[t]he real issue [Petitioner] asked the district court to address, however, was whether she was admissible or entitled to relief from removal"); *Barrientos v. Baltazar*, 2024 WL 5455686, at *4 (S.D. Tex. Dec. 18, 2024), *R&R adopted*, 2025 WL 744703 (S.D. Tex. Mar. 7, 2025) ("While Congress has limited habeas review of removal decisions made under § 1225(b)(1), Petitioner is not challenging his expedited removal order, and, thus, his claim is not barred by § 1252."). Petitioner's case is not about whether he is properly subject to an expedited removal order (which the Court cannot consider), rather it is about whether his procedural due process rights are violated by his current detention under 8 U.S.C. § 1225.

9 / 19

The Court also briefly addresses 8 U.S.C. § 1252(a)(2) which states in relevant part that "[n]ot withstanding" "any other habeas corpus provision" "no court shall have jurisdiction to review" any "cause or claim arising from or relating to the implementation or operation of an order of removal" under 8 U.S.C. § 1225(b)(1); a decision to "invoke the provisions" of 8 U.S.C. § 1225(b)(1); "the application" of 8 U.S.C. § 1225(b)(1); or "procedures and policies adopted by the Attorney General to implement" 8 U.S.C. § 1225(b)(1).

Absent an express statement from Congress that the Court is stripped of its jurisdiction to hear Petitioner's habeas petition, the Court does not read 8 U.S.C. § 1252(a)(2)(A) to limit consideration of a noncitizen's challenge to his detention. The Court concludes that 8 U.S.C. § 1252(a)(2)(A) does not bar the Court from considering this limited claim on the grounds set forth in the discussion of the merits below. *See N.A. v. Larose*, 2025 WL 2841989, at *4 n.2 (S.D. Cal. Oct. 7, 2025) (citing *Padilla v. U.S. Immigr. and Customs Enf't*, 704 F. Supp. 3d 1163, 1170 (W.D. Wash. 2023); *Co Tupul v. Noem*, 2025 WL 2426787, at *2 n.4 (D. Ariz. Aug. 4, 2025); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 141 (W.D.N.Y. 2025) ; *see also Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 663 (E.D. Mich. 2003) ("if the statute has not been lawfully applied, the question then becomes whether the unlawful application has violated petitioners' constitutional rights." (citation omitted)). Here, Petitioner is not challenging the merits of a removal order, his removability, or anticipatorily seeking relief from removal. Nor is he challenging the decision of DHS to initiate expedited removal proceedings. Mr. Strunin is challenging only the lawfulness of his detention, rather than challenging the "procedures and policies adopted by the Attorney General to implement" expedited removal proceedings. *See* 8 U.S.C. § 1252(a)(2).

Therefore, nothing in 8 U.S.C. § 1252 strips the Court of its power to review Mr. Strunin's constitutional claims that he was entitled to adequate notice, an individualized determination of the need for detention, and an opportunity to respond before he was subject to mandatory detention by DHS.

### B. Procedural Due Process Protections

Finding that the Court has jurisdiction to consider the merits of Petitioner's claims, the Court now turns to his challenge to his detention on procedural due process grounds. Petitioner argues that as a noncitizen, even though he was paroled into the country through a port of entry, he has a protected liberty interest in his freedom from detention, and his detention without notice, an individualized determination of the need for detention, and a meaningful opportunity to be heard violates his procedural due process rights. (*See* Dkt. 1 at 8–12; Dkt. 19 at 6.) As stated above, in *Bonilla Chicas* the Court found that Mr. Bonilla Chicas had a protected liberty interest and rejected the notion that *Thuraissigiam* precluded the petitioner's due process claim, in part because the petitioner's case differed significantly from that of the noncitizen asylum seeker (Thuraissigiam) since Mr. Bonilla Chicas had lived in the United States for years whereas Thuraissigiam was apprehended "at the threshold of initial entry." *See Thuraissigiam*, 591 U.S. at 107. Here, because Petitioner is a noncitizen granted parole—who is subject to the entry fiction—the Court analyzes whether the entry fiction prevents him from obtaining a protected liberty interest because he is treated for due process purposes as if standing at the threshold of entry; however, as discussed below, the entry fiction as applied in *Thuraissigiam* does not counsel that such an outcome is warranted.

The Fifth Circuit has recognized that "parole creates something of legal fiction; although a paroled alien is physically allowed to enter the country, the legal status of the alien is the same as

if he or she were still being held at the border waiting for his or her application for admission to be granted or denied." *Duarte v. Mayorkas*, 27 F.4th 1044, 1058 (5th Cir. 2022) (citation omtted). And the Supreme Court has noted important distinctions "between those [noncitizens] who have come to our shores seeking admission. . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma*, 357 U.S. at 187. "In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id*. (citing *Mezei*, 345 U.S. at 212.) "[O]nce [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Respondents recognize that "[p]rocedural due process protects an individual's right to be heard prior to deprivation of life, liberty or property," however they argue that "[8 U.S.C. §] 1225(b)(1) does not require Petitioner to have a bond hearing and the Supreme Court has recognized the constitutionality of detaining individuals during the pendency of removal proceedings." (Dkt. 21 at 3.) In Respondents view, "[a]s such, there can be no procedural due process violation." (*Id*.) In support of their arguments, Respondents cite *Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Demore v. Kim*, 538 U.S. 510 (2003); and *Dep't of Homeland Sec. v. Thuraissigiam*.[2] For the reasons expressed below, the Court disagrees with Respondents and finds

---

[2] In *Bonilla Chicas v. Warden*, 5:26-cv-00131, Dkt. No.11 (S.D. Tex. Feb. 20, 2026), the Court described in detail its reasoning as to why *Demore* does not preclude a noncitizen from challenging his detention during removal proceedings. *See Bonilla Chicas*, 5:26-cv-00131 at *14–21. The Court explained that (1) Demore addressed a different statutory provision of the INA— 8 U.S.C. 12 / 19

that Petitioner, as a noncitizen who was granted parole and continuously lived in the United States for several years, has a protected liberty interest in his freedom from detention.

### 1. Applicability of the Due Process Clause

Respondents argue that the reapprehension and detention of Mr. Strunin for mandatory detention under 8 U.S.C. § 1252(b) does not violate his due process rights because he is entitled to no more due process than what the INA provides him under the statute. (*See* Dkt. 21.) Specifically, Respondents cite *Dep't of Homeland Sec. v. Thuraissigiam* for the proposition that an applicant for admission has "only those rights regarding admission that Congress has provided by statute."

In *Thuraissigiam*, a noncitizen asylum seeker (Thuraissigiam) was apprehended by DHS "25 yards" into the United States and issued an expedited order of removal. 591 U.S. at 114. Thuraissigiam's asylum claim was deemed non-credible and he filed a habeas petition thereafter. *Id.* at 114–15. He argued, in part, that "IIRIRA violates his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Id.* at 138. The Supreme Court rejected Thuraissigiam's attempt to challenge his removal proceedings under both the Suspension Clause and the Due Process Clause, holding that "an alien in [Thuraissigiam's] position has only those rights regarding admission that Congress has provided by statute." *Id.* at 140. *Thuraisigiam* relied in part on the Supreme Court's prior ruling in *Mezei*. *Id.* (citing *Mezei*, 345 U.S. at 212). In

---

§ 1226(c) rather than 8 U.S.C. § 1225(b); and (2) the reasoning in Demore is inapplicable to Petitioner's case because Demore evaluated the facial constitutionality of mandatory detention under § 1226(c) rather than an as-applied challenge. *Id*. The Court also highlighted that in *Demore*, the Supreme Court's reasoning differed from the current context because it heavily weighed the fact that Congress had considered specific evidence of the unique danger and flight risk that noncitizens with certain criminal convictions present when carving out the mandatory detention language of 8 U.S.C. § 1226(c). *Id*. The same reasoning applied in *Bonilla Chicas* applies in force to the instant case.

*Mezei*, the Supreme Court addressed the case of a noncitizen (Mezei) who left the country after living in the United States and arrived at Ellis Island. Mezei was refused entry into the United States and detained at Ellis Island pending disposition of his case. *Mezei*, 345 U.S. at 208. The Supreme Court held that Mezei's detention at Ellis Island, despite its location within the United States, did not "transform[] [his case] into something other than an exclusion proceeding" and he remained an "entering alien," for the purposes of his exclusion proceeding. 345 U.S. at 212–13.

*Thuraissigiam* does not preclude Petitioner's current procedural due process claims. Importantly, "the Supreme Court has never applied the entry fiction doctrine to a case like this— to constitutionally justify the detention of a person living freely, for years, within the United States—and its expansion here cannot be justified.'" *Torres v. Hermosillo*, 2026 WL 145715,  *4 (W.D. Wash. Jan. 20, 2026) (quoting *Rincon v. Hyde*, 2025 WL 3122784, *2 (D. Mass. Nov. 7, 2025) and citing *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023)); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 147, 151 (W.D.N.Y. 2025) ("While Thuraissigiam forecloses the argument that [Petitioner] has due process rights beyond those provided by statute concerning the process for deciding whether or not he will be admitted to this country, it does not foreclose his arguments regarding parole revocation and release.") [3]  This is because unlike in

---

[3] The Court notes that the Fifth Circuit addressed the constitutionality of indefinite detention for a group of Cuban nationals who had previously been paroled and who were convicted of aggravated felonies, ordered excluded from the United States, and were detained pending their return to Cuba in *Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437, 1439 (5th Cir.), *amended,* 997 F.2d 1122 (5th Cir. 1993). The Fifth Circuit briefly addressed petitioners' claims to procedural due process in the parole process, holding that the petitioners', as noncitizens with felony convictions, did not have a protected liberty interest. *Gisbert*, 988 F.2d at 1441. The Court finds that *Gisbert* is not controlling as to whether Mr. Strunin has a protected liberty interest because its holding and reasoning were decided in the context of the indefinite detention of noncitizens with felony convictions subject to final orders of exclusion. *See id*. at 1440. Moreover, it is unclear whether *Gisbert* remains good law given that it was decided prior to the Supreme Court's decision in *Zadvydas*, 533 U.S. at 687 addressing the indefinite detention of noncitizens ordered removed. *See*

Thuraissigiam, Petitioner does not "challeng[e] any part of the process by which [his] removability will be determined." *See Jennings*, 583 U.S. at 292–94 (plurality opinion) (concluding that such claims did not "aris[e] from any . . .proceeding brought to remove an alien"). An "arriving" noncitizen such as Petitioner "has only those rights *regarding admission* that Congress has provided by statute." *See Thuraissigiam*, 591 U.S. at 140 (emphasis added). In other words, while a person asking to enter the country at a port of entry may be allowed *physical* entry into the country pending the determination of his application for admission, the fact of his physical presence within our country provides him no greater constitutional protection *as to his application* than if he were outside the country. *See Leng May Ma,* 357 U.S. at 188.[4]

Where Thuraissigiam sought "a fair procedure to apply for asylum, withholding of removal, and CAT relief," Petitioner does not challenge any aspect of the admission process or the process he is due in his removal proceedings. *See Thuraissigiam*, 591 U.S. at 118. Instead, he challenges his current detention without an individualized determination that he is a flight risk or danger to the community. While detention pending removal proceedings may be considered an "aspect of the deportation process" it does not directly implicate Congress's "sovereign prerogative

---

*Zadvydas v. Underdown*, 185 F.3d 279, 283 (5th Cir. 1999), vacated sub nom. Zadvydas v. Davis, 533 U.S. 678 (2001), and opinion withdrawn and superseded sub nom. *Zadvydas v. Davis*, 285 F.3d 398 (5th Cir. 2002). Moreover, the applicability of *Gisbert* is further in question given that it was decided prior to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996 which fundamentally changed U.S. immigration law by replacing separate exclusion and deportation proceedings with a single "removal" process. *See* Pub. L. 104-208, 110 Stat. 3009, 3009-546 (1996).

[4] "In [*Leng May Ma*] the Court held, as a matter of statutory construction, that an alien paroled into the United States pursuant to § 212(d)(5) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5) (1952 ed.), was not 'within the United States' for the purpose of availing herself of § 243(h), which authorized the withholding of deportation in certain circumstances. The conclusion reflected the longstanding distinction between exclusion proceedings, involving the determination of admissibility, and deportation proceedings." *Plyler v. Doe*, 457 U.S. 202, 212 n.12 (1982).

. . . to decide which aliens to admit" in the way that Thuraissigiam's or Mezei's request for relief did. *Rincon*, 2025 WL 3122784, at *5 (quoting *Demore*, 538 U.S. at 523 and *Thuraissigiam*, 591 U.S. at 139).

"'This matters because that "sovereign prerogative,' is the basis of the judge-made rule that undergirds *Thuraissigiam* and similar cases—the so-called entry fiction doctrine, whereby a non-citizen physically present in the United States is treated 'as if stopped at the border' for purposes of due process[.]" *Id*. (citations omitted). Granting the relief requested in *Mezei* (entrance into the United States) or *Thuraissigiam* (a more robust process for admission) directly implicated questions related to the "sovereign prerogative" of governing admission to the country, whereas Petitioner's challenge to the lawfulness of his detention does not. *See Thuraissigiam*, 591 U.S. at 140 (citation omitted); *see also Al-Thuraya v. Warden, Orange Cnty. Corr. Facility*, 2025 WL 2858422, at *4 (S.D.N.Y. Oct. 9, 2025) (finding "the concern animating the entry fiction exception—that is, the political branches' authority to legally admit or exclude noncitizens—doesn't apply" and concluding "the due-process claim [petitioner] advances doesn't concern his application at all, just the legality of his detention").

Second, Petitioner's position as a parolee is materially distinct from Thuraissigiam's as a noncitizen apprehended 25 yards from the border. To claim that Mr. Strunin was never really "here" requires a much greater extension of the legal fiction. "As the Supreme Court explained in *Morrissey v. Brewer*, parole 'enables [the parolee] to do a wide range of things open to persons' who have never been in custody or convicted of any crime." *Torres*, 2026 WL 145715, at *5 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (citations omitted)). Though subject to restrictions, "the parolee's 'condition is very different from that of confinement in a prison.'" *Id.* (citations omitted)*, "*Because '[t]he parolee has relied on at least an implicit promise that parole

16 / 19

will be revoked only if he fails to live up to the parole conditions, the revocation of parole undoubtedly inflicts a grievous loss on the parolee, and the parolee possesses a protected interest in his 'continued liberty.'" *Id.* (citations omitted).

Here, Petitioner "has 'lived with relative freedom in the United States for . . . years'" and the "[C]onstitution does not countenance fictional erasure of [his] actual presence in this country— or [his] concomitant due process rights." *Id*. (quoting *Rincon*, 2025 WL 3122784, at * 6–7). The entry fiction is an exception to the general rule that due process applies to all persons. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law."); *see also Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("[A]ll persons within the territory of the United States are entitled to the protection guarant[e]ed by [the Fifth Amendment], and . . . even aliens shall not be . . .deprived of life, liberty, or property without due process of law."). And "[t]he proper use of legal fiction is to prevent injustice." *Union Refrigerator Transit Co. v. Commonwealth of Kentucky*, 199 U.S. 194, 208 (1905) (citations omitted). "Pretending that Petitioner never entered the United States not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every 'person' within the United States." *Torres*, 2026 WL 145715 at *4 (quoting U.S. Const. Amend. V).

Petitioner seeks only minimal due process prior to being stripped of his liberty and held at a detention center; he seeks this minimal level of due process as he continues navigating the same immigration proceedings he was subject to since initially arriving in the United States at a port of entry. "The 'entry fiction' that excludable aliens are to be treated as if detained at the border despite their physical presence in the United States determines the aliens' rights with regard to immigration

and deportation proceedings," *Lynch v. Cannatella*, 810 F.2d 1363, 1373 (5th Cir. 1987) but it does not limit the procedural due process rights of noncitizens with regard to their detention. *See Rodriguez v. Bondi*, 3:26-cv-00292, Dkt. No. 13 (W.D. Tex. Feb. 25, 2026). Accordingly, the Court concludes that the entry fiction does not preclude Petitioner from acquiring a protected liberty interest by virtue of living in the United States on parole, and Petitioner is entitled to due process protections in the context of his current detention.

### 2. Application of the Due Process Clause

Finding that Petitioner has a protected liberty interest, the Court further finds that his detention without minimal due process protections in the form of notice, an individualized determination as to the need for detention, and an opportunity to be heard, violates his rights under the Due Process Clause. Although the circumstances of Petitioner's case differ slightly from those the Court considered in *Bonilla Chicas*, applying the same *Mathews v. Eldridge* analysis to the facts of Petitioner's case yields the same result. All three *Mathews* factors weigh in favor of Petitioner, and the Due Process Clause of the Fifth Amendment guarantees Mr. Strunin adequate notice of the intent to revoke his parole, an individualized assessment of his flight risk or dangerousness, and an opportunity to be heard prior to his redetention by ICE. *See Bonilla Chicas*, 5:26-cv-131, at *21–24.

### C. Remedy

Finally, having answered the threshold question that Petitioner is entitled to an individualized determination of the need for his detention and finding that his detention without such is a violation of his Fifth Amendment rights, the Court turns to the appropriate remedy. The Court finds that the appropriate remedy in this case is immediate release in accordance with the Court's reasoning as set out in *Bonilla Chicas*, 5:26-cv-131, at *24–25.

18 / 19

## Conclusion

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, (Dkt. 1), is **GRANTED IN PART**. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 16), is **DENIED**.

1.      Respondents are **ORDERED** to **RELEASE** Petitioner from custody immediately, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release within 24 hours of the date of this Order.

2.      Respondents must notify Petitioner's counsel of the exact time and location of Petitioner's release **no less than three hours** prior to Petitioner's release from custody.

3.      If Petitioner is redetained, all applicable regulations and procedures must be followed, including that Petitioner be afforded an individualized assessment of Petitioner's flight risk and dangerousness as guaranteed by the Due Process Clause of the Fifth Amendment.

4.      Within two weeks of the date of this Order, the parties shall **FILE** advisories with the Court indicating whether the parties oppose entry of a final judgment in this case.

IT IS SO ORDERED.

SIGNED this March 3, 2026.

Diana Saldaña
United States District Judge